UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CALVIN LARAY EDWARDS,

Petitioner,

-vs-                                                     Case No.  6:10-cv-1250-Orl-19KRS
                                                                  (6:08-cr-272-Orl-19KRS)

UNITED STATES OF AMERICA,

Respondent.
_____

# ORDER

This case comes before the Court on the following:

1.      Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 by
        Petitioner Calvin Laray Edwards (Doc. No. 3, filed Sept. 16, 2010);

2.      Response in Opposition to Motion to Vacate, Set Aside, or Correct Sentence
        Pursuant to 28 U.S.C. § 2255 by Respondent United States of America (Doc. No. 7,
        filed Jan. 18, 2011); and

3.      Reply to Response to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to
        28 U.S.C. § 2255 by Petitioner Calvin Laray Edwards (Doc. No. 11, filed Mar. 17,
        2011).

## Background

### I.  Procedural History

Petitioner Calvin Laray Edwards was charged in a one-count indictment with possession with

intent to distribute five grams or more of a mixture and substance containing a detectable amount

of cocaine base, commonly known as "crack cocaine," in violation of 21 U.S.C. § 841(a)(1) and

(b)(1)(B).  (Criminal Case No. 6:08-cr-272-Orl-19KRS, Doc. No. 1, filed Dec. 10, 2008.)[1]  The Government subsequently filed an Information pursuant to 21 U.S.C. § 851 notifying Petitioner that if he was convicted on the charged count, the Government would seek to enhance his sentence based upon the prior convictions described in the Information.  (Criminal Case Doc. No. 21, filed Dec. 22, 2008.)

Petitioner entered into a written plea agreement and pled guilty before Magistrate Judge Karla R. Spaulding to Count I of the Indictment.  (Criminal Case Doc. No. 23, filed Jan. 20, 2009.) Magistrate Judge Spaulding entered a Report and Recommendation recommending that the guilty plea be accepted and that Petitioner be adjudicated guilty.  (Criminal Case Doc. No. 29, filed Jan. 22, 2009.)  The Court accepted the plea, adjudicated Petitioner guilty as to Count I, and deferred ruling on acceptance of the plea agreement until the time of sentencing.  (Criminal Case Doc. No. 33, filed Jan. 26, 2009.)  On April 27, 2009, a sentencing hearing was conducted, and the Court sentenced Petitioner to 192 months imprisonment and a eight-year term of supervised release on Count I of the Indictment.  (Criminal Case Doc. No. 39 at 2-3, filed May 4, 2009.)

Petitioner signed an Acknowledgment of Right to Appeal at the sentencing hearing. (Criminal Case Doc. No. 37, filed Apr. 27, 2009.)  Petitioner filed a notice of appeal on June 2, 2009. (Criminal Case Doc. No. 41, filed June 2, 2009.)  Pursuant to the Court Order dated August 25, 2009, the notice of appeal was deemed timely filed.  (Criminal Case Doc. No. 63.)  On December 7, 2009, the Eleventh Circuit Court of Appeals granted the Government's motion to dismiss the appeal due to a valid appeal waiver contained in Petitioner's plea agreement.  (Criminal Case Doc. No. 64, filed Dec. 9, 2009.)

---

[1] Criminal Case No. 6:08-cr-272-Orl-19KRS will be referred to as "Criminal Case."

On August 12, 2010, Petitioner timely filed a motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 1.) Pursuant to the Court's instructions, (Doc. No. 2), Petitioner refiled his Section 2255 Motion on the proper form, asserting three grounds for relief: (1) coerced guilty plea; (2) ineffective assistance of counsel; and (3) breach of plea agreement. (Doc. No. 3, filed Sept. 16, 2010.) The Government filed a response in opposition, (Doc. No. 7), and Petitioner filed a reply to the response. (Doc. No. 11.)

### Standard of Review

**I.    Relief**

Section 2255 provides federal prisoners with an avenue for relief under limited circumstances:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* To obtain this relief on collateral review, however, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *See United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

**II.    Hearing**

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon,

determine the issues and make findings of fact and conclusions of law with respect thereto."  The

Eleventh Circuit Court of Appeals has explained, "[a] habeas corpus petitioner is entitled to an

evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'"

*Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (quoting *Futch v. Dugger*, 874 F.2d 1483,

1485 (11th Cir. 1989)).  However, "if the record refutes the applicant's factual allegations or

otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Aron v. United States*, 291 F.3d 708, 715

(11th Cir. 2002) (explaining that no evidentiary hearing is needed when a petitioner's claims are

"affirmatively contradicted by the record" or "patently frivolous").

## Analysis

### I.  Sentence-appeal Waiver

Pursuant to the sentence-appeal waiver provision of Petitioner's plea agreement, Petitioner

agreed that:

> this Court has jurisdiction and authority to impose any sentence up to the statutory
> maximum and *expressly waives the right to appeal [his] sentence or to challenge it
> collaterally on any ground*, including the ground that the Court erred in determining
> the applicable guidelines range pursuant to the United States Sentencing Guidelines,
> except (a) the ground that the sentence exceeds [his] applicable guidelines range as
> determined by the Court pursuant to the United States Sentencing Guidelines; (b) the
> ground that the sentence exceeds the statutory maximum penalty; or (c) the ground
> that the sentence violates the Eighth Amendment to the Constitution; provided,
> however, that if the government exercises its right to appeal the sentence imposed,
> as authorized by 18 U.S.C. § 3742(b), then [Petitioner] is released from his waiver
> and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

(Criminal Case Doc. No. 23 at 12-13 (emphasis added).)  Before determining whether the sentence-

appeal waiver bars Petitioner's claims here, it is appropriate to determine whether the sentence-

appeal waiver is valid.

### A.  Validity of Sentence-appeal Waiver

Sentence-appeal waivers are valid if made knowingly and voluntarily.  *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005).  "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver."  *United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001).

During the plea colloquy, Petitioner identified his plea agreement, acknowledged that he read and understood the terms of his plea agreement, and confirmed that he discussed his plea agreement with counsel:

THE COURT: Mr. Edwards, is that your Plea Agreement?

THE DEFENDANT: Yes, ma'am.

THE COURT: Is that the Plea Agreement of the United States?

MS. GABLE: Yes.

THE COURT: . . . Did you read the Plea Agreement before you signed it?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did you talk to [counsel] about it before you signed it?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you believe you understand the Plea Agreement?

THE DEFENDANT: Yes, ma'am.

(Criminal Case Doc. No. 124 at 9.) Petitioner further acknowledged his understanding that he would

be waiving certain rights by entering into the plea agreement, including the right to collaterally

attack his sentence except in limited circumstances:

> THE COURT: There's a part of the Plea Agreement that talks about your right to appeal, and I want to review that with you.  First, if you plead guilty, you're admitting for all time that you committed the crime.  You give up any defenses or excuses you may have, and you give up the right to come back to this court or to go to another court later on and argue that you shouldn't have been found guilty.
>
> The right to come back to this court or to go to another court is called the right to appeal.  So if you plead guilty, you have no right to appeal from the finding that you are guilty.
>
> If you think the judge makes a mistake in the sentence you receive, though, you usually do have the right to appeal from or challenge that mistake.  You can go to the next higher court, which is called the court of appeals, and ask for the mistake to be corrected or you can come back to this court, usually under a federal statute called 28, United States Code, Section 2255, and challenge the mistake and ask the court to fix it.  Under the Plea Agreement, you're giving up some of your rights to appeal from or challenge a mistake in your sentence.  You can only do that if the sentence is above the guideline range as determined by the Court; if the sentence is more than the maximum permitted by the law; if the sentence violates the Eighth Amendment to the Constitution, which is your protection against cruel and unusual punishment; or if the government appeals, then you could appeal for any reason. Do you understand how that limits your right to appeal from or challenge a mistake in your sentence?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Is that a right you're willing to give up?
>
> THE DEFENDANT: Yes, ma'am.

(*Id.* at 15-16.)

The Court also advised Petitioner during the plea colloquy that he was not required to plead

guilty and that he had the right to go to trial.  (*Id.* at 7-8, 21.) Petitioner acknowledged that he would

lose his right to a trial upon pleading guilty.  (*Id.* at 21.)  In addition, Petitioner declared that he was

not threatened in any way to plead guilty.  (*Id.* at 8.)  Petitioner pled guilty and confirmed that his plea was freely and voluntarily entered.  (*Id.* at 25.)

In light of the thorough and comprehensive plea colloquy, during which Petitioner was specifically questioned about the sentence-appeal waiver and voluntarily acknowledged his understanding of the sentence-appeal waiver, the Court finds that the sentence-appeal waiver is valid.

### B. Effect of Valid Sentence-appeal Waiver

Finding that the sentence-appeal waiver is valid, the Court must determine whether Petitioner's claims are barred by the sentence-appeal waiver.  The plea agreement prohibits Petitioner from collaterally challenging his sentence on any ground except "(a) the ground that the sentence exceeds [his] applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds that statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution." (Criminal Case Doc. No. 23 at 13.)  This sentence-appeal waiver bars not only challenges to the sentence itself, but also assertions that counsel was ineffective during sentencing. *See Williams*, 396 F.3d at 1352 ("[A] valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing. . . . [A] contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless.").

Petitioner claims that his counsel was ineffective for failing to object to the accuracy of the prior convictions listed in the presentence report ("PSR").   (Doc. No. 3 at 8.)   This claim of ineffective assistance of counsel during sentencing is barred by the sentence-appeal waiver. *Williams*, 396 F.3d at 1352.   In any case, as discussed *infra* part IV.E, this claim fails on the merits.

## II. Procedural Default

A defendant who fails to object at the trial court level to error he believes the court has committed or fails to raise such objection on appeal is procedurally barred from presenting his objection in a motion subsequently filed under 28 U.S.C. § 2255 absent a showing of (1) cause and prejudice or (2) a fundamental miscarriage of justice. *United States v. Frady*, 456 U.S. 152, 166-68 (1982); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994).   In order to show cause, a petitioner must show some external impediment preventing counsel from constructing or raising the claim. *High v. Head*, 209 F.3d 1257, 1262-63 (11th Cir. 2000).   "Such external impediments include evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).   Prejudice exists if "'there is at least a reasonable probability that the result of the proceeding would have been different' had the constitutional violation not occurred." *Id.* (quoting *Henderson v.* Campbell, 353 F.3d 880, 892 (11th Cir. 2003)).   Absent cause and prejudice, the procedural default of a constitutional claim may be excused only if enforcing the default would result in a fundamental miscarriage of justice. *Id.*   This exception applies if the petitioner can show that, in light of new evidence, it is probable that no reasonable juror would have convicted him. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner's Section 2255 Motion raises three grounds for relief: (1) coerced guilty plea; (2) ineffective assistance of counsel; and (3) breach of plea agreement.  (Doc. No. 3.)  Petitioner's claims of ineffective assistance of counsel and breach of the plea agreement are properly raised for the first time in the instant Section 2255 Motion.  *See United States v. Al-Arian*, 514 F.3d 1184, 1191 (11th Cir. 2008) ("[A] § 2255 motion may be used to enforce promises made in a plea agreement.") (citations omitted); *United States v. Merrill*, 513 F.3d 1293, 1308 (11th Cir. 2008) ("[A]n ineffective assistance of counsel claim is properly raised in a collateral attack on the conviction under 28 U.S.C. § 2255." (quoting *United States v. Butler*, 41 F.3d 1435, 1437 n.1 (11th Cir. 1995))).

On the other hand, Petitioner's claim of a coerced guilty plea could have been raised on direct appeal, but Petitioner failed to do so.  Because no further factual development was required for Petitioner to assert this claim on direct appeal, his failure to do so renders the claim procedurally barred absent a showing of cause and prejudice or a fundamental miscarriage of justice.  *See Mills*, 36 F.3d at 1055 ("A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development.").

Petitioner does not squarely address the elements of procedural default.  However, even if Petitioner could establish an excuse for procedural default, Petitioner is not entitled to relief on his claim of a coerced guilty plea because it has no merit.  *See infra* part III.

## III.  Coerced Guilty Plea

Petitioner claims that he was coerced into pleading guilty.  (Doc. No. 3 at 4.)  In support of this claim, Petitioner asserts that his attorney told him "right before trial" that the prosecutor made him a "verbal promise" that he would drop Petitioner's enhancement under 21 U.S.C. § 851 if he pled guilty.  (*Id.*; Doc. No. 11 at 5.)

"A guilty plea involves the waiver of a number of a defendant's constitutional rights, and must therefore be made knowingly and voluntarily to satisfy the requirements of due process." *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (citations omitted).  To be knowing and voluntary, a guilty plea must be free from coercion.  *United States v. Mosley*, 173 F.3d 1318, 1332 (11th Cir. 1999) (citing *United States v. Jones*, 143 F.3d 1417, 1418-19 (11th Cir. 1998)).

Petitioner's claim that he was coerced into pleading guilty by an oral promise of the Government relayed through his attorney is belied by the provisions of the plea agreement and Petitioner's statements during the plea colloquy that he voluntarily pled guilty based solely on the Government's promises contained in the plea agreement.  Pursuant to the plea agreement, Petitioner agreed that he was convicted of four felony drug offenses as defined in 21 U.S.C. § 851, and Petitioner waived the right to challenge those convictions.  (Criminal Case Doc. No. 23 at 2-3.)  No provision of the plea agreement limited the Government's ability to seeking sentencing enhancements based on Petitioner's prior convictions under 21 U.S.C. § 851.  In addition, the Government expressly reserved the right to report any of Petitioner's background information, including prior criminal activity, to the Court and make any sentencing recommendations to the Court not otherwise prohibited by the plea agreement:

> The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads . . . .  The United States further reserves its right to make any recommendation it deems appropriate regarding the disposition of the case, subject to any limitations set forth herein, if any.

(Criminal Case Doc. No. 23 at 11.)  The plea agreement further provides that it "constitutes the entire agreement between the government and [Petitioner] with respect to the aforementioned guilty

plea and no other promises, agreements, or representations exist or have been made to [Petitioner] or [his] attorney with regard to such guilty plea." (*Id.* at 16.)

During the plea colloquy, Petitioner confirmed that the only promises made to him by the Government were those contained in the plea agreement:

> THE COURT: . . . Those are all of the promises written in the Plea Agreement.  Do you believe anybody has made you any other promise about what sentence you will receive or anything else that will occur in exchange for your plea of guilty?
>
> THE DEFENDANT: No, ma'am.

(Criminal Case Doc. No. 51 at 15.)  Petitioner also acknowledged during the plea colloquy that he and counsel had extensive discussions about the effect of 21 U.S.C. § 851 on his sentence:

> THE COURT: I've talked a little bit about the sentencing guidelines.  Have you and Mr. Randall talked about how they might apply in your case?
>
> MR. RANDALL: Your Honor, I told Mr. Edwards that because of the 851 filed, using the code, that he may not get to the guidelines unless he performs substantial assistance.
>
> THE COURT: But you haven't reviewed with him what the guideline range would be if he did?
>
> MR. RANDALL: Well, yes, I have, Your Honor; but I told him to look first to the code, which is where he stands right now.
>
> THE COURT: Oh, no, no.  I understand that.  I just want to make sure that --
>
> MR. RANDALL: We've had extensive deliberations about that.  Is that correct?
>
> THE DEFENDANT: Yeah.

(*Id.* at 17.)

Given this testimony and the provisions of the plea agreement voluntarily executed by Petitioner, *see supra* part I.A, Petitioner's allegations that the Government made additional promises coercing him to plead guilty, without more, do not entitle him to relief.  *See Blackledge v. Allison*,

431 U.S. 63, 73-74 (1977) ("[R]epresentations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("[T]here is a strong presumption that the statements made during the [plea] colloquy are true.").

## IV.  Ineffective Assistance of Counsel

Petitioner asserts that his trial counsel was ineffective for: (1) failing to file a notice of appeal upon Petitioner's request in a timely manner, (Doc. No. 3 at 4); (2) falsely informing Petitioner that no entrapment defense was available, (*id.* at 5); (3) falsely informing Petitioner that the reliability of the confidential informant could not be tested through a suppression hearing, (Doc. No. 11 at 1); (4) waiving Petitioner's bond hearing without his knowledge, (Doc. No. 3 at 7); and (5) failing to object to the accuracy of Petitioner's prior convictions in the PSR, (*id.* at 8).

To prevail on a claim of ineffective assistance of counsel, Petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. These two elements are commonly referred to as the performance and prejudice prongs, respectively. *Reece v. United States*, 119 F.3d 1462, 1464 n.4 (11th Cir. 1997).  If Petitioner fails to establish either prong, the Court need not consider the other prong in finding that there was no ineffective assistance of counsel.  *Strickland*, 466 U.S. at 697.  As discussed below, each of Petitioner's

ineffective assistance of counsel claims fails for want of either deficient performance by counsel or prejudice to Petitioner from counsel's performance.

### A. Failure to Timely File Notice of Appeal as Directed

Petitioner asserts that his counsel was ineffective for failing to timely file a notice of appeal as instructed.  (Doc. No. 3 at 4.)  It is well-settled that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citations omitted).  However, counsel in fact filed a timely notice of appeal, (Criminal Case Doc. No. 42, filed June 2, 2009), as the Court extended the deadline to appeal under Federal Rule of Appellate Procedure 4(b)(4).  (Criminal Case Doc. No. 63.)  Petitioner's appeal was subsequently dismissed by the Eleventh Circuit Court of Appeals due to the existence of a valid appeal waiver, not due to untimeliness.  (Criminal Case Doc. No. 64.)  Because Petitioner was actually afforded an appeal, Petitioner's claim that counsel was ineffective for failing to timely fine a notice of appeal is without merit.

### B. Misinforming Petitioner About Availability of Entrapment Defense

Petitioner claims that counsel misinformed him that the defense of entrapment was not available in his case.  (Doc. No. 3 at 5.)  Petitioner alleges that counsel told him "that the[re] was no entrapment law in the state of Florida," (*id.*), and that "there was no such thing as entrapment in the Federal Courts."  (Doc. No. 11 at 1.)  Petitioner further alleges that he did not know that an entrapment defense was available until the Court mentioned entrapment at sentencing.  (*Id.*)  Petitioner asserts that if he knew that he could have asserted an entrapment defense, he would have proceeded to trial.  (Doc. No. 11 at 1.)  Despite these allegations, the evidence of record shows that

the entrapment defense was not viable, and thus, Petitioner suffered no prejudice from counsel's alleged misinformation about the entrapment defense. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (citation omitted)).

"A successful entrapment defense requires two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant." *United States v. Miller*, 71 F.3d 813, 816 (11th Cir. 1996) (quoting *United States v. Brown*, 43 F.3d 618, 622 (11th Cir. 1995)). With respect to the first element, "evidence that [a] government agent sought out or initiated contact with the defendant, or was the first to propose the illicit transaction," without more, has been held to be insufficient to meet the defendant's burden. *United States v. Andrews*, 765 F.2d 1491, 1499 (11th Cir. 1985).

If the defendant "adduces evidence showing inducement, 'the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime.'" *Miller*, 71 F.3d at 816 (quoting *Brown*, 43 F.3d at 623). "[T]he predisposition inquiry is a purely subjective one which asks the jury to consider the defendant's readiness and willingness to engage in the charged crime absent any contact with the government's officers or agents." *Id.* (quoting *Brown*, 43 F.3d at 624). Predisposition is a fact-intensive inquiry, and the Eleventh Circuit has not set out an exhaustive list of factors by which to judge predisposition. *Id.* However, "[p]redisposition may be demonstrated simply by a defendant's ready commission of the charged crime." *Id.* (quoting *Brown*, 43 F.3d at 625); *see also Jacobson v. United States*, 503 U.S. 540, 549-50 (1992) ("[A]n agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy

or sell drugs and, if the offer is accepted, make an arrest on the spot or later.  In such a typical case . . . , the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition.").  "A predisposition finding is also supported by evidence that the defendant was given opportunities to back out of illegal transactions but failed to do so."  *Miller*, 71 F.3d at 816 (quoting *Brown*, 43 F.3d at 625); *see also United States v. Ventura*, 936 F.2d 1228, 1230-31 (11th Cir. 1991) ("Evidence of predisposition may, among other things, include the readiness or eagerness of the defendant to deal in the proposed transaction.  Evidence that a defendant was afforded an opportunity to back out of a transaction and did not avail himself of that opportunity also constitutes evidence of predisposition." (citations omitted)).

Petitioner's offense conduct described in his plea agreement, which was acknowledged by Petitioner during his plea colloquy and recounted in his letter to the Court prior to sentencing, demonstrate that the entrapment defense was not supported by the facts of the case.  Petitioner was introduced to the confidential source when Petitioner sought to have repairs performed on his truck.  (Criminal Case Doc. No. 34-2 at 2.)  Petitioner told the confidential source that he was "financially unstable to pay him" but that he needed his truck in order to keep his job.  (*Id.*)  According to Petitioner, the confidential source suggested that he would fix Petitioner's truck if Petitioner would purchase drugs for him.  (*Id.*)  At this meeting, Petitioner stated that he could obtain cocaine base for the confidential source.  (Criminal Case Doc. No. 23 at 15.)

Several days later, at approximately 4:15 p.m. on July 9, 2008, Petitioner met the confidential source at an unspecified residence in Osceola County, Florida.  (*Id.*)  Petitioner informed the confidential source that he did not have cocaine base with him, but that he would leave to pick it up.  (*Id.*)  Petitioner promised to return in 15 minutes.  (*Id.*)  At approximately 4:40 p.m., Petitioner

returned with a plastic baggie of crack cocaine, which he sold to the confidential source for a profit of $75.00.  (*Id.* at 16; Criminal Case Doc. No. 34-2 at 2.)  Petitioner acknowledged during his plea colloquy that he purposefully purchased and sold cocaine knowing such conduct was illegal:

> THE COURT: All right. Tell me what it is you did on or about July 9, 2008, that makes you guilty of this crime.
>
> THE DEFENDANT: I purchase cocaine and sell it – sell five grams or more to another person.
>
> THE COURT: Okay. Was it crack?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Did you know at the time what you were doing was illegal?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Did anybody force you to do it?
>
> THE DEFENDANT: No, ma'am. I was trying to feed my kids, basically.

(Criminal Case Doc. No. 51 at 22.)

The fact that the confidential informant suggested or provided Petitioner an opportunity to commit the charged crime alone is insufficient as a matter of law to establish the element of inducement.  *See Andrews*, 765 F.2d at 1499 (noting that "evidence that [a] government agent sought out or initiated contact with the defendant, or was the first to propose the illicit transaction," without more, is insufficient to meet the defendant's burden of showing inducement).  Further, Petitioner's conduct demonstrates a predisposition to commit the crime.  Notwithstanding Petitioner's four prior felony convictions for cocaine possession, (Doc. No. 23 at 2), Petitioner had multiple opportunities to back out of selling cocaine to the confidential source, including on the day of the unlawful transaction.  (Criminal Case Doc. No. 23 at 15; Doc. No. 34-2 at 2.) Rather than

retreat from criminal conduct, Petitioner obtained and sold cocaine to the confidential informant within the span of 30 minutes, thereby demonstrating a predisposition to commit the crime. (Criminal Case Doc. No. 23 at 15-16); *see Miller*, 71 F.3d at 816 (noting that eagerness to commit a crime and failure to back out of committing a crime despite opportunities to do so demonstrate predisposition to committing the crime).

Finding no evidence of record or allegations supporting the entrapment defense, there is no reasonable probability that the outcome of Petitioner's case would have been different had counsel not allegedly misinformed Petitioner about the availability of the entrapment defense. Absent prejudice to Petitioner resulting from counsel's alleged misstatements of law regarding the entrapment defense, the claim for ineffective assistance of counsel is without merit. *Strickland*, 466 U.S. at 694.

### C.  Misinforming Petitioner about Availability of Suppression Hearing

Petitioner next argues that counsel was ineffective for falsely informing him that the reliability of the confidential source could not be tested through a suppression hearing. (Doc. No. 11 at 1.) Petitioner alleges that he "could have proven . . . that the [confidential source] was untrustworthy based on the [confidential source's] debriefing statement and testimony." (*Id.*) Petitioner does not specify any portion of the debriefing statement and testimony assailing the confidential source's credibility, and the confidential source's debriefing statement and testimony are not contained in the record. Absent any evidence or allegations reasonably suggesting that the confidential source's debriefing statement or testimony lacked credibility, Petitioner fails to meet his burden of establishing that he would have gone to trial rather than plead guilty had he been informed that the confidential source's credibility could have been challenged. *See Hill*, 474 U.S.

at 59 ("[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.").

### D. Waiving Bond Hearing without Petitioner's Knowledge

Petitioner claims that his counsel was ineffective for waiving a bond hearing without Petitioner's knowledge. (Doc. No. 3 at 7.) This claim is not cognizable under 28 U.S.C. § 2255, which only affords a federal prisoner relief if his sentence (a) was imposed in violation of the Constitution or federal laws, (b) was imposed by a court without jurisdiction to do so, (c) was in excess of the maximum permitted by the law, or (d) is otherwise subject to attack. A claim that counsel was ineffective for failing to request a bond hearing does not fall within any of these grounds for relief, *Alexander v. United States*, No. 6:07-cv-736-Orl-19KRS, 2008 WL 2329411, at *6 (M.D. Fla. June 4, 2008), and it readily follows that an ineffective assistance of counsel claim for waiving a bond hearing also is not cognizable under Section 2255. Further, Petitioner has not asserted any facts reasonably suggesting that he was prejudiced by counsel's alleged waiver of a bond hearing. Therefore, even if this claim is cognizable under Section 2255, Petitioner is not entitled to any relief.

### E. Failing to Object to Prior Convictions Listed in PSR

Finally, Petitioner argues that counsel was ineffective for failing to object to the accuracy of Petitioner's prior convictions listed in the PSR. (Doc. No. 3 at 8.) It appears that Petitioner claims that counsel deficiently failed to object to the prior convictions supporting the ten-year mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(B) and his designation as a career

-18-

offender under U.S.S.G. § 4B1.1.  (*Id.*)  As discussed below, because both the ten-year mandatory

minimum sentence and career offender designation were properly applied, Petitioner cannot

demonstrate prejudice from counsel's failure to object to Petitioner's prior convictions at sentencing.

*Strickland*, 466 U.S. at 694.

### 1.   Mandatory Minimum

Petitioner pled guilty to violating 21 U.S.C. § 841(b)(1)(B), which subjected Petitioner to

a ten year mandatory minimum sentence if he had "a prior conviction for a felony drug offense

[which] has become final."  The term "felony drug offense" is defined by statute as "an offense that

is punishable by imprisonment for more than one year under any law of the United States or of a

State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana,

anabolic steroids, or depressant or stimulant substances."  21 U.S.C. § 802(44).  Under Florida law,

possession of cocaine with an intent to sell or deliver the cocaine is a second degree felony

punishable by up to 15 years imprisonment.   Fla. Stat. §§ 893.13(1)(a)(1), 893.03(2)(a)(4),

775.082(3)(c).   Mere possession of cocaine is a third degree felony under Florida law and is

punishable by up to 5 years imprisonment.    Fla. Stat. §§ 893.13(6)(a), 893.03(2)(a)(4),

775.082(3)(d).

Petitioner argues that two of his prior convictions were improperly classified as prior

convictions for the "sale and delivery" of cocaine, as opposed to mere possession of cocaine.  (Doc.

No. 11 at 3.)   Regardless of whether Petitioner's prior convictions were properly classified as "sale

and delivery" as opposed to mere possession of cocaine,[2] any one of those convictions triggered the

---

[2] With respect to the conviction in Case Number "49-2001cf-1022," one of the convictions
that Petitioner claims was improperly classified, Petitioner admitted the validity of this conviction
(continued...)

ten year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B) for a prior "felony drug

offense." *See United States v. Mejias*, 47 F.3d 401, 404 (11th Cir. 1995) (holding that a Florida

third-degree felony drug conviction resulting from a plea of *nolo contendere* was a conviction upon

which the ten-year mandatory minimum under 21 U.S.C. § 841(b)(1)(B) was properly based).

## 2.  Career Offender Designation

Petitioner was designated a career offender under U.S.S.G. § 4B1.1(a), which requires that:

(1) Petitioner was at least 18 years old at the time he committed the instant offense of conviction;

(2) the instant offense is either a crime of violence or a controlled substance offense; and (3)

Petitioner have at least two prior felony convictions of either a crime of violence or a controlled

substance offense.

Petitioner asserts that 8 of the 16 prior convictions listed in his criminal history were

improperly counted because they either had been dismissed or were too old to be counted.  (Doc.

No. 11 at 3.)  However, Petitioner does not identify any particular conviction that was improperly

counted.   In any case, Petitioner was properly designated a career offender under U.S.S.G. §

4B1.1(a).

The first element for career offender status is satisfied because Petitioner was 35 years old

at the time of the offense of conviction.  (Criminal Case Doc. No. 23 at 15; Doc. No. 58 at 26.)  The

second element is also satisfied, as Petitioner's conviction of possession with intent to distribute 5

or more grams of cocaine base, (Criminal Case Doc. No. 23 at 1), was a "controlled substance

offense," meaning an "an offense under federal . . . law, punishable by imprisonment for a term

_____

(...continued)
for possession of cocaine with intent to sell in his plea agreement.  (Criminal Case Doc. No. 23 at
2.)

exceeding one year, that prohibits . . . the possession of a controlled substance . . . with intent to .

. . distribute." U.S.S.G. § 4B1.2(b); *see* 21 U.S.C. § 841(b)(1)(B) (providing a maximum term of

imprisonment of 40 years absent any conduct enhancing the punishment).

The third element for career offender status under U.S.S.G. § 4B1.1(a) is also satisfied, as

Petitioner had at least two prior felony convictions of either a crime of violence or a controlled

substance offense.  One prior conviction for a controlled substances offense[3] and one prior felony

conviction for a crime of violence[4] were identified in the PSR, and Petitioner makes no factual

allegations calling into question the validity of those offenses.  Because Petitioner was not

improperly classified as a career offender under U.S.S.G. § 4B1.1(a), counsel's failure to object to

---

[3] In listing Petitioner's prior convictions supporting career offender status, the PSR notes that Petitioner was convicted of Unlawful Sale or Delivery of a Controlled Substance in the Putnam Count Circuit Court, Case No. 54-1997-CF-1780, and that Petitioner was sentenced on August 3, 1998.  (PSR ¶ 24.)  The crime of unlawful sale or delivery of a controlled substance may be a second or third degree felony or a first degree misdemeanor depending upon the controlled substance at issue.  *See* § 893.13, Fla. Stat.  A first degree misdemeanor is punishable by a term of imprisonment up to one year.  § 775.082(4)(a), Fla. Stat.  Absent any evidence of record, including in the PSR, describing the controlled substance for which Petitioner was convicted, this conviction was not properly included as a controlled substance offense under U.S.S.G. § 4B1.2(b).  *See* U.S.S.G. § 4B1.2(b) (defining "controlled substance offense" to be an "offense under federal or state law, punishable by imprisonment for a term exceeding one year . . . .").

However, the PSR further provides that Petitioner was convicted of Possession of Cocaine with Intent to Sell or Deliver in Osceola County Circuit Court, Case No. 49-2001-CF-1022, and Petitioner was sentenced on October 8, 2001.  (PSR ¶ 24.)  As discussed *supra* part IV.E.1, a conviction for Possession of Cocaine with Intent to Sell carries a maximum term of imprisonment greater than one year and thus is a controlled substance offense under U.S.S.G. § 4B1.2.

[4] Petitioner was convicted of Robbery With a Weapon in the Osceola County Circuit Court, Case No. 49-1990-CF-1751, and Petitioner was sentenced on September 19, 1991.  (PSR ¶ 24.)  Robbery is a "crime of violence" under U.S.S.G. § 4B1.2.  *See* U.S.S.G. § 4B1.2, cmt. n.1 ("'Crime of violence' includes . . . robbery . . . ."); *United States v. Lockley*, 632 F.3d 1238, 1241 n.2 (11th Cir. 2011) (holding that a Florida conviction for attempted robbery is a crime of violence under U.S.S.G. § 4B1.2(a)).

the application of prior convictions did not prejudice Petitioner, and the claim of ineffective assistance of counsel is without merit. *Strickland*, 466 U.S. at 694.

### V.  Breach of Plea Agreement

Petitioner argues that the Government breached the plea agreement by not dropping the sentencing enhancement under 21 U.S.C. § 851.  (Doc. No. 3 at 14.)  This argument is without merit because, as discussed *supra* part III, Petitioner acknowledged in open court during his plea colloquy that the Government did not make that promise to Petitioner.  *See Raulerson v. United States*, 901 F.2d 1009, 1012 (11th Cir. 1990) (finding no breach of a plea agreement where the petitioner failed to show that the allegedly breached provision was part of the parties' agreement).

### Conclusion

Based on the foregoing, the Court finds that Petitioner is not entitled to a hearing because his claims are either procedurally barred or affirmatively contradicted by the record.  Petitioner has not demonstrated that he is entitled to relief on any of the claims he has raised.  Any allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

1. The Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 by Petitioner Calvin Laray Edwards (Doc. No. 3) is **DENIED**, and this case is **DISMISSED with prejudice**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.      The Clerk of the Court is directed to file a copy of this Order in criminal case number 6:08-cr-272-Orl-19KRS and to terminate the Memorandum in Support of Petitioner's Section 2255 Motion to Set Aside, Vacate, or Correct Sentence (Criminal Case Doc. No. 68, filed Sept. 16, 2010) pending in that case.

4.      This Court should grant an application for certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Petitioner has failed to make a substantial showing of the denial of a constitutional right.[5]  Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE AND ORDERED** at Orlando, Florida, this day of April 11 , 2011.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

---

[5] Pursuant to the *Rules Governing Section 2255 Proceedings for the United States District Court*:

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).  If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.  A motion to reconsider a denial does not extend the time to appeal.

Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C. foll. § 2255.

Copies furnished to:

Calvin Laray Edwards
Counsel of Record